IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CARLTON WAYNE KEY,

        Petitioner,

v.                                              CASE NO. 5:17-cv-84-MCR-GRJ

SECRETARY, DEP'T
OF CORRECTIONS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Petitioner's Amended Petition for

Writ of Habeas Corpus under 28 U.S.C. § 2254, stemming from his

convictions for principal to attempted manufacturing of a controlled

substance, principal to child abuse, and principal to first degree arson.

(ECF No. 10.) Respondent has filed a response and appendix with relevant

portions of the state-court record, arguing that the Amended Petition

("Petition") should be denied. (ECF No. 21.) Petitioner filed a reply, (ECF

No. 24), and the Petition is therefore ripe for review. Upon due

consideration of the Petition, the response, the state-court record, and the

reply, the undersigned recommends that the Petition should be denied.[1]

## **State-Court Proceedings**

Petitioner was charged by information on November 24, 2010, with three counts: (1) Principal to attempted manufacture of a controlled substance (methamphetamine), in violation of Fla. Sat. §§ 777.011, 777.04(1), and 893.13(1)(a); (2) Principal to child abuse, in violation of Fla. Stat. §§ 777.011 and 827.03(1); and (3) Principal to first degree arson of a dwelling, in violation of Fla. Stat. §§ 777.011 and 806.01(1)(a). (ECF No. 21-1 at 11.) Petitioner proceeded to trial on June 28, 2011, and was convicted on all counts. (*Id.* at 33, 56, 86–314.) He subsequently filed a motion for new trial, which the trial judge denied. (*Id.* at 54, 35–36.) Petitioner was sentenced on July 11, 2011, to thirty years imprisonment on count three and five years imprisonment on both counts one and two, to run concurrent with the sentence imposed in count three. (*Id.* at 51–52, 56–62.)

Petitioner filed his notice of appeal through counsel on August 2, 2011, followed by counsel's *Anders*[2] brief. (*Id.* at 69–70, 316–39.)

---

[1] The Court has determined that an evidentiary hearing is not warranted because the Court may resolve the Petition on the basis of the record. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

[2] *Anders v. California*, 386 U.S. 738 (1967).

Petitioner subsequently filed a *pro se* initial brief on June 25, 2012. (ECF No. 21-2 at 27–48.) The First District Court of Appeal ("First DCA") per curiam affirmed without written opinion on December 6, 2012, and the mandate followed on February 12, 2013. (*Id.* at 50–52.)

Petitioner next filed a *pro se* motion for postconviction relief under Fla. R. Crim. P. 3.850 on February 5, 2014, raising seven ineffective assistance of trial counsel claims and one cumulative error claim. (*Id.* at 60–103.) On April 14, 2014, the circuit court summarily denied the motion in part with respect to grounds two, six, and seven, ordered the State to respond to grounds one, three, four, and five, and reserved ruling on ground eight. (*Id.* at 118–21.) On October 27, 2014, following the State's response, the circuit court summarily denied the postconviction motion in part with respect to grounds three, four, and five, granted an evidentiary hearing as to ground one, and reserved ruling on ground eight. (ECF No. 21-3 at 55–62.) Following the evidentiary hearing on August 3, 2015, the circuit court issued a final order denying Petitioner's motion for postconviction relief on October 15, 2015. (*Id.* at 186–206, 208–11.) Petitioner appealed, but the First DCA per curiam affirmed without written opinion. (*Id.* at 224–25, 230–50, 302–03.)

In the meantime, on November 4, 2016, Petitioner also filed a motion

to correct illegal sentence under Fla. R. Crim. P. 3.800(a), arguing that his

sentence was illegal because the trial court engaged in vindictive

sentencing. (*Id.* at 312–19.) The circuit court denied the motion on

November 10, 2016, however, as untimely and without merit. (*Id.* at

320–22.) Petitioner appealed, but the First DCA per curiam affirmed

without written opinion on March 1, 2017. (ECF No. 21-4 at 58–59, 63.)

The mandate followed on March 28, 2017. (*Id.* at 62.)

Petitioner then filed his initial petition in this Court on March 10, 2017,

followed by the instant Petition on May 1, 2017. (ECF Nos. 1, 10.)

## Scope of Federal Habeas Review

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state postconviction motion. 28

U.S.C. §§ 2254(b)(1), (c). Exhaustion requires that prisoners give the state

courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate

review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To

properly exhaust a federal claim, a petitioner must "fairly present" the claim

in each appropriate state court, thereby affording the state courts a

meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

In accordance with § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination

was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see also* § 2254(e)(1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."); *see also Carey v. Musladin,* 549 U.S. 70, 74–77 (2006) (section 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of §

2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362,

404–06 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams*,

529 U.S. at 362). "Under the 'contrary to' clause, a federal habeas court

may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court

decides a case differently than this Court has on a set of materially

indistinguishable facts. Under the 'unreasonable application' clause, a

federal habeas court may grant the writ if the state court identifies the

correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case."

*Williams,* 529 U.S. at 412–13. "Avoiding these pitfalls [described in

*Williams v. Taylor* ] does not require citation of our cases-indeed, it does

not even require *awareness* of our cases, so long as neither the reasoning

nor the result of the state-court decision contradicts them." *Early v. Packer,*

537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state

court's decision was unreasonable must be assessed in light of the record

the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

In *Gill*, the Eleventh Circuit clarified how the federal habeas court

should address the "unreasonable application of law" and the

"unreasonable determination of facts" tests. The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. 633 F.3d at 1288 (citing *Harrington v. Richter*, 562 U.S. 86 (2011); *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 562 U.S. at 98). The Supreme Court, however, has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court

stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether

counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## Discussion

### Ground One: Counsel did not render ineffective assistance with respect to the State's plea offer.

Petitioner argues in ground one that he rejected the State's three-

year plea offer pursuant to counsel's advice because counsel felt confident she could beat the arson and child abuse charges at trial. Petitioner claims counsel misadvised him because there was overwhelming evidence to convict him of the charges. Petitioner says he was prejudiced by counsel's deficient performance because he was convicted at trial and sentenced to thirty years imprisonment.

Petitioner raised this claim in ground one of his motion for postconviction relief but the circuit court denied the claim on the merits. (ECF No. 21-3 at 210–11.) The circuit court noted Petitioner testified at the evidentiary hearing that he was aware of the State's thirty-six month plea offer prior to trial but that he was not guilty of arson or child abuse. (*Id.* at 210.) Petitioner further testified that counsel did not advise him of all of the evidence against him. (*Id.*) On cross-examination, Petitioner stated that he was still not interested in the thirty-six months plea offer to cover all charges because he was not guilty of arson or child abuse. (*Id.*)

Trial counsel also testified at the evidentiary hearing that she advised Petitioner to take the plea offer but Petitioner refused because the offer included convictions for arson and child abuse. (*Id.*) Counsel further testified that Petitioner was aware of all of the discovery she received in his case and that she never advised Petitioner she could beat the charges.

(*Id.*) The circuit court therefore found that Petitioner showed neither

deficient performance nor prejudice. (*Id.*)

> The circuit court also denied the claim because

> Defendant was well aware of the State's plea offer and in fact
> counsel did advise him to accept the plea offer. However,
> Defendant was opposed to pleading to a package deal which
> involved charges he felt that he was not guilty of regardless of
> the evidence . . . against him. Simply stated, the Defendant
> would have insisted on proceeding to trial because . . . the
> State's package deal included charges of child abuse and
> arson. Moreover, Defendant . . . was aware of the evidence
> against him that the State forwarded through discovery.

(*Id.* at 211.) The First DCA per curiam affirmed the circuit court's denial

without written opinion. (*Id.* at 303.)

To succeed on an ineffective assistance of counsel claim in the

context of a plea negotiation, "a defendant must show the outcome of the

plea process would have been different with competent advice." *Lafler v.*

*Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). In the context of a

rejected plea offer, "a defendant must demonstrate that[] (1) counsel failed

to communicate a plea offer or misinformed defendant concerning the

penalty faced, (2) defendant would have accepted the plea offer but for

inadequate notice and (3) acceptance of the State's plea offer would have

resulted in a lesser sentence." *Johnson v. Sec'y, DOC*, No.

2:12-CV-469-FTM-29CM, 2015 WL 179299, at *5 (M.D. Fla. Jan. 14, 2015)

(citation omitted).

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law. The state court's findings that Petitioner was aware of the evidence against him and that counsel advised him to take the plea are entitled to deference because Petitioner has not presented clear and convincing evidence that rebuts the findings. *See* § 2254(e); (ECF No. 21-3 at 198–99, 202–03.) These findings wholly refute Petitioner's ineffective assistance claim.

Furthermore, Petitioner cannot show that he would have accepted the plea offer because the plea offer included the arson and child abuse charges. (ECF No. 21-3 at 191, 198–99.) Petitioner admitted, however, that he would not take a plea offer that included those charges. (*Id.* at 191, 194–95.) Accordingly, Petitioner cannot demonstrate either deficient performance or prejudice. Ground one should therefore be denied.

### Ground Two: Counsel did not render ineffective assistance by failing to object to the first degree arson jury instructions.

In ground two Petitioner argues that trial counsel should have objected to the first degree arson jury instructions, which omitted the element requiring the State to prove beyond a reasonable doubt that

Petitioner knew or had reasonable grounds to know that the structure was

occupied by a human being.

Petitioner raised this claim in ground two of his motion for

postconviction relief. The circuit court denied the claim, however, stating,

> Defendant's allegations are without merit and refuted by the
> attached record. . . . . The Defendant was charged in Count 3,
> Principal to First Degree Arson (Dwelling) contrary to Sections
> 777.011 and 806.[01(1)](a),[3] Florida Statutes, a first degree
> felony. . . . . Defendant's argument is misplaced. Therefore,
> Defendant's ground is denied.

(ECF No. 21-2 at 118.) The First DCA per curiam affirmed.

Petitioner has not demonstrated that the state court's decision was

contrary to, or involved an unreasonable application of clearly established

Federal law. The trial judge instructed the jury as follows:

> To prove the crime in count three, principal to first degree
> arson, the state must prove the following elements beyond a
> reasonable doubt: Carlton Wayne Key damaged or cause[d] to
> be damaged a dwelling by fire or explosion. Number two, the
> damage was caused while the defendant was engaged in the
> commission of attempted manufacture of a controlled
> substance, methamphetamine. Number three, the home at
> 4368 Lee Road was a dwelling.

(ECF No. 21-1 at 298–99.) These instructions mirrored the instructions in

the Florida Standard Jury Instructions in Criminal Cases for first degree

---

[3] Although the circuit court erroneously cited § 806.1(a), the error appears to be
harmless.

arson in violation of § 806.01(1)(a), which were also approved by the Florida Supreme Court. *See* Fla. Std. Jury Instr. (Crim.) 12.1. Contrary to Petitioner's assertion, occupancy was not a required element for a violation of subsection (1)(a). *See* § 806.01(1)(a) ("Any person who willfully and unlawfully, or while in the commission of any felony, by fire or explosion, damages or causes to be damaged . . . [a]ny dwelling, *whether occupied or not*, or its contents . . . is guilty of arson in the first degree . . . .") (emphasis added). There was no reason for counsel to object to the jury instructions. Counsel's failure to make a frivolous objection does not result in ineffective assistance.

Moreover, even if counsel had objected, the objection would have been denied because the jury instructions were correct. Petitioner therefore cannot demonstrate prejudice. Ground two should be denied.

**Ground Three: Counsel did not render ineffective assistance by failing to investigate and file a motion to suppress Petitioner's confession or for failing to hire a medical expert to testify in support of a motion to suppress.**

Petitioner argues in ground three that trial counsel should have filed a motion to suppress his confession to Investigator Basford while at the hospital following the explosion because his confession was involuntary. Petitioner says he was severely injured, heavily medicated, and never

agreed to speak with police at the hospital. Thus, he contends that counsel should have filed a motion to suppress his confession. Petitioner further argues that counsel should have hired a medical expert to corroborate his claim that his statements were involuntary and to testify at the suppression hearing. Petitioner says the trial court likely would have granted a motion to suppress, which would have diminished the evidence against him at trial.

Petitioner raised this claim in ground three of his motion for postconviction relief. The circuit court denied the claim on the merits, stating:

> The Defendant has not demonstrated deficient performance by counsel. Inv. Basford indicated in the materials provided to defense counsel in discovery that he had consulted with the Defendant's nurses about the medications he was taking, and they indicated that the medications should not have affected his judgment. The Defendant's statement was recorded, and the statement itself demonstrates that the Defendant understood what was happening and was coherent, that the statement was freely and voluntarily given, and that the Defendant provided facts that were consistent with established facts about how the crime occurred. . . . . The Defendant also testified that the nurses told him that he did not have to talk to law enforcement, that he could notify them at any time if he wished to stop, and that they would be checking on him regularly and would escort them out if needed.
>
> Additionally, defense counsel attempted to use Defendant's statement and the fact that the Defendant had cooperated and allegedly told the truth from the beginning to his advantage during trial. Counsel argued that the Defendant cooperated with police from the beginning, and that his two previous

statements, would be consistent with his trial testimony. She
contrasted this with co-defendant Anthony Neel, and used the
consistency of the Defendant's statements and the fact that he
was willing to tell the truth to argue that he, rather than Neel,
should be believed. . . . . In her cross-examination of Inv.
Basford, she pointed out all the ways in which the Defendant's
statements were truthful, and the fact that he was willing to give
a statement but that his co-defendants hid from law
enforcement. . . . . Given the way that the Defendant's counsel
used his statement at trial, he has not demonstrated prejudice
from counsel's failure to file a motion to suppress the
statement.

(ECF No. 21-3 at 57.)

The state court's decision was neither contrary to, nor did it involve

an unreasonable application of clearly established Federal law. As the

state court noted, the materials provided to defense counsel prior to trial

made clear that Investigator Basford consulted with the nurses regarding

the medications Petitioner had taken and whether they would affect his

judgment. (ECF No. 21-3 at 67.) Petitioner's recorded statement at the

hospital also demonstrated that he was coherent, understood what was

happening, and that his statement was given freely and voluntarily. (*Id.* at

69–98.) Notably, Petitioner admitted during his statement that he contacted

law enforcement to give them a statement and that he wanted to help

them. Petitioner's also testified at trial that although he knew he did not

need to speak with Investigator Basford, he nevertheless agreed to speak

with him and cooperate. (ECF No. 21-1 at 269–70.) There was no reason for counsel to move to suppress Petitioner's statement.

Furthermore, counsel attempted to utilize Petitioner's statement to Investigator Basford to benefit Petitioner at trial by emphasizing Petitioner's willingness to cooperate, thereby discrediting Mr. Neel's testimony. Accordingly, Petitioner cannot demonstrate that counsel's failure to file a motion to suppress the statement prejudiced him.

Finally, counsel also did not render deficient performance by failing to hire a medical expert in support of a motion to suppress because there was no basis for a motion to suppress. Moreover, any speculation as to what the medical expert would have testified is exactly that—speculation. Petitioner cannot demonstrate prejudice based on mere speculation. Ground three should be denied.

### Ground Four: Counsel did not render ineffective assistance by failing to investigate telephone records to support a motion to suppress his confession.

In ground four Petitioner claims trial counsel was ineffective because he did not investigate Petitioner's telephone records, which Petitioner says would have shown that he never called Investigator Basford to set up a meeting to offer a confession. Petitioner claims his telephone records would have substantiated his assertion that his confession was not

voluntary. Petitioner argues that there is a reasonable probability the trial court would have granted a motion to suppress the confession had they been presented with this evidence, which would have changed the outcome of the proceedings.

This claim is unexhausted and procedurally defaulted.[4] Petitioner did not present this specific claim to the state courts. Petitioner presented a *similar* claim in ground four of his motion for postconviction relief, arguing that trial counsel rendered ineffective assistance by failing to adequately investigate and prepare a meaningful defense. (ECF No. 21-2 at 85–92.) Therein, Petitioner claimed Investigator Basford's testimony pertaining to Petitioner's confession corroborated his co-defendant's testimony and contradicted Petitioner's version of events. Petitioner argued that trial counsel should have obtained the telephone records to call into question Investigator Basford's credibility, which Petitioner says would have required the jury to believe his co-defendant's version of events without corroboration. The claim presented to the state court, however, had nothing to do with a motion to suppress and the state court therefore did not consider whether trial counsel rendered ineffective assistance of

---

[4] Although Respondent claims Petitioner exhausted this claim, Respondent nevertheless asserts all available procedural bars. (ECF No. 21 at 12.)

Case 5:17-cv-00084-MCR-GRJ   Document 25   Filed 07/31/18   Page 22 of 32

*Page 22 of 32*

counsel in the context of a motion to suppress.

Petitioner also cannot return to state court at this juncture to present this federal claim. Accordingly, ground four is also procedurally defaulted.

A procedurally defaulted claim like Petitioner's can support federal habeas relief in only two narrow situations. First, the petitioner may demonstrate cause and prejudice for the default. *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him . . . ." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Attorney error that constitutes ineffective assistance of counsel violative of the Sixth Amendment can render "cause." *Murray v. Carrier*, 477 U.S. 478, 487 (1986). But, an ineffective assistance of counsel claim must generally be presented to the state courts as an independent claim before it can be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (citing *Murray*, 477 U.S. at 489). In such case, unless the prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, the ineffective assistance of counsel claim cannot serve as cause for another procedurally defaulted claim. *Id.* at 453. To show prejudice, the petitioner must show that there is at least a reasonable probability that the

*Case No: 5:17-cv-84-MCR-GRJ*                    22

result of the proceeding would have been different had the constitutional violation not occurred. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Second, the petitioner may show that enforcing the procedural default would result in a fundamental miscarriage of justice. *Mize*, 532 F.3d at 1190. To show a fundamental miscarriage of justice, the petitioner must show that in light of new evidence, no reasonable juror would have convicted him. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner has failed to demonstrate either cause and prejudice for the default or a fundamental miscarriage of justice. Petitioner provides no reason for his failure to properly exhaust this claim in state court. The Court therefore need not proceed to the issue of prejudice. *See Ward v. Hall*, 592 F.3d 1144 (11th Cir. 2010) ("It is well established that if the petitioner fails to show cause, we need not proceed to the issue of prejudice."). Nor does this claim involve new evidence upon which no reasonable juror would have convicted him. Petitioner therefore cannot demonstrate a fundamental miscarriage of justice to excuse his procedural default. *See Mize*, 532 F.3d at 1190. Accordingly, Petitioner is not entitled to federal habeas relief on ground four.

Even assuming this was the same claim Petitioner raised in ground

four of his motion for postconviction relief, the claim is without merit. The circuit court denied ground four on the merits because Petitioner confirmed at the end of his statement to Investigator Basford that he contacted law enforcement. (ECF No. 21-2 at 273; ECF No. 21-3 at 59.)[5] There was therefore no reason for counsel to subpoena telephone records.

The circuit court further noted that there was no basis for suppression of the statement even if law enforcement had initiated contact as Petitioner claimed because Petitioner was not under arrest when he gave his statement and also testified that he freely agreed to talk to law enforcement and wanted to give them a statement. (ECF No. 21-2 at 272–73; ECF No. 21-3 at 59.) Furthermore, Investigator Basford did not testify that Petitioner called him. Instead, Investigator Basford testified that his Captain called him, advised him that Petitioner wanted to talk to them, and that he then called Petitioner. (ECF No. 21-1 at 227; ECF No. 21-3 at 59–60.) The telephone records therefore would not have impeached Investigator Basford and Petitioner could not have been prejudiced by counsel's failure to subpoena the records. Thus, even liberally construing the instant claim to be the same claim raised in ground four of Petitioner's motion for postconviction relief, it should nevertheless be denied.

---

[5] The First DCA subsequently per curiam affirmed.

### *Ground Five: Counsel did not render ineffective assistance by failing to question and then strike a juror for cause who was the lead investigator's first cousin.*

Petitioner claims trial counsel erred by not questioning a prospective juror—who was Investigator Basford's first cousin—during jury selection. Petitioner argues that although the juror stated he could be fair and impartial to both sides in the case, "a mere statement of impartiality was not sufficient to determine that Juror Basford could actually perform his function as an independent finder of fact without additional questioning during voir dire by defense counsel." (ECF No. 10 at 16.) Petitioner further claims trial counsel erred by not objecting to the juror's presence on the jury, which he says also deprived him of the opportunity to seek appellate review on the issue.

The circuit court denied this claim on the merits because Petitioner could not meet the prejudice standard set forth in *Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007), which requires a defendant to demonstrate actual bias—i.e., that the juror was biased against the defendant and that the bias was evident on the face of the record. (ECF No. 21-2 at 119–20.) The state appellate court affirmed.

As the circuit court noted, Juror Basford stated during voir dire that he could be a fair and impartial juror and set aside his familial relationship.

(ECF No. 21-1 at 356; ECF No. 21-2 at 120.) Petitioner has not presented any evidence of bias beyond his mere allegations, nor has he even pointed to anything in the record suggesting that Juror Basford was biased against Petitioner. Accordingly, Petitioner cannot show that counsel erred in failing to strike Juror Basford or that he was prejudiced from counsel's failure. Ground five should therefore be denied.

### *Ground Six: The trial court did not unconstitutionally penalize Petitioner by engaging in vindictive sentencing.*

Petitioner claims that his sentence is disproportionate to his co-defendants sentences. Specifically, Anthony Neel entered into a negotiated plea and received thirty-six months imprisonment on counts one and three, with count two nolle prossed. Similarly, Angela Locke entered a plea of no contest to the three charges and received five years imprisonment on counts one and two and fifteen years imprisonment on count three. Petitioner argues that although he was the least culpable, he received a much harsher sentence after going to trial. He therefore contends that the trial court engaged in unconstitutional vindictive sentencing.

Petitioner raised this issue in his motion to correct illegal sentence under Fla. R. Crim. P. 3.800(a). The state court denied the claim, however, because the motion was "both untimely and without merit . . . ." (ECF No.

21-3 at 320.) The court explained that the remedy for a vindictive sentence claim was via a motion for postconviction relief, not a motion to correct illegal sentence. (*Id.*) The court further explained that Petitioner's 3.800(a) motion was nevertheless untimely because it was filed more than two years after his conviction and sentence became final. (*Id.*) The First DCA thereafter per curiam affirmed.

As Respondent correctly argues, however, this claim is unexhausted and procedurally defaulted. The state court did not pass upon the merits of this claim and Petitioner cannot return to the state court at this juncture to exhaust this claim. Petitioner's procedural default also cannot be excused because he offers no reason for his failure to properly exhaust this claim, nor does this claim involve newly discovered evidence.

Even assuming, arguendo, that Petitioner had properly exhausted this claim, it is without merit. Due process forbids vindictive sentencing by increasing a defendant's sentence because the defendant exercised a constitutional right. *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969). A presumption of vindictive sentencing arises "whenever a judge imposes a more severe sentence upon a defendant after a new trial" unless the reasons for the increased sentence are apparent on the record. *Id.* at 726.

The imposition of a longer sentence than a defendant would

> have received had he pleaded guilty[, however,] does not
> automatically amount to punishment for the defendant's
> exercising his right to stand trial. . . . . A trial judge may
> reasonably increase a defendant's sentence after trial because
> the trial gives the judge the benefit of hearing testimony,
> becoming aware of the facts of the case, and understanding
> "the flavor of the event and the impact upon any victims."

*Creed v. Dep't of Corr.*, 330 F. App'x 771, 773 (11th Cir. 2009) (citations omitted). It is a petitioner's burden to show a "reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Alabama v. Smith*, 490 U.S. 794, 799 (1989).

For starters, this case does not give rise to a presumption of vindictiveness because Petitioner did not receive a new trial that resulted in a more severe sentence.

Petitioner also has not shown a reasonable likelihood that his sentence was the product of actual vindictiveness as a result of his decision to proceed to trial. Petitioner faced a minimum sentence of 62.5 months imprisonment and a maximum sentence of forty years imprisonment. (ECF No. 21-1 at 66.) His thirty-year sentence was therefore within the guideline sentence.

Moreover, courts generally reject claims of disparate sentencing where—as here—the co-defendants' sentences resulted from the entry of a plea or prosecutorial discretion. *See, e.g.*, *Smith*, 490 U.S. at 802 ("A

guilty plea may justify leniency, . . . a prosecutor may offer a 'recommendation of a lenient sentence or a reduction of charges' as part of the bargaining process . . . and we have upheld the prosecutorial practice of threatening a defendant with increased charges if he does not plead guilty, and following through on that threat if the defendant insists on his right to stand trial . . . ."); *England v. State*, 940 So. 2d 389, 406 (Fla. 2006) ("In instances where the codefendant's lesser sentence was the result of a plea agreement or prosecutorial discretion, this Court has rejected claims of disparate sentencing.").

Nothing on the record before this Court suggests that the trial court engaged in vindictive sentencing. Accordingly, even if ground six was not procedurally defaulted, it is nevertheless without merit and should be denied.

### Ground Seven: The cumulative effect of trial counsel's errors did not deprive Petitioner of a fair trial.

Finally, Petitioner contends that all of the errors committed by trial counsel, either considered individually or together, resulted in the denial of a fair trial.

The state court denied this claim on the merits, because a "claim of cumulative error does not warrant relief when each individual claim is

without merit or procedurally barred." (ECF No. 21-3 at 211.) The state appellate court per curiam affirmed.

Petitioner has not demonstrated that this decision was contrary to, or involved an unreasonable application of clearly established Federal law. Even assuming the cumulative error doctrine applies in the context of ineffective assistance of counsel claims,[6] as discussed, none of the alleged errors by counsel approach the threshold standard of ineffective assistance of counsel. Petitioner is therefore not entitled to federal habeas relief on ground seven.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a

---

[6] The Eleventh Circuit has noted the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel. *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 564 (11th Cir. 2009).

constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Amended Petition for Writ of Habeas Corpus, ECF No. 10, should be **DENIED**, and that a certificate of appealability should be **DENIED**.

**DONE AND ORDERED** this 31st day of July 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A**

copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.